588

WILLIAM V. GRIFFIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 98077.   Promulgated November 6, 1941.

*E. Barrett Prettyman, Esq.*, and *Francis T. Carmody, Esq.*, for the petitioner.

*Allen T. Akin, Esq.*, and *Thomas N. Lewis, Esq.*, for the respondent.

OPINION.

Van Fossan: The respondent bases his contention that the petitioner is chargeable with taxable gain largely on the assumption and theory that the sale of the long stock, the purchase of the new stock, and the covering of the short sales constituted a single and indivisible transaction. He cites many cases to support the general principle that a single transaction may not be broken up into various elements in order to avoid a tax. He then argues that the steps taken by the petitioner were integral parts of a unified plan and affirms that the facts of record support his view.

It can not be gainsaid that the petitioner had the absolute right to establish and maintain both long and short accounts in the same stock. Article 117–6 of Regulations 86,[1] as well as the well known practices of the stock exchange recognize that right. The regulation deals with the results of its exercise. Article 117–6 provides in part:

\* \* \* If, however, he covered the short sale by delivering shares which he held for more than one year but not for more than two years, only 80 per cent of the recognized gain or loss would be taken into account.

Thus the respondent's own regulation contemplates the taxpayer's right to maintain a long account as well as to purchase and own outright stock with which to cover his short sale commitments.

---

[1] Art. 117–6. *Gains and losses from short sales.*—For income tax purposes, a short sale is not deemed to be consummated until delivery of property to cover the short sale, and the percentage of the recognized gain or loss to be taken into account under section 117 (a) from a short sale shall be computed according to the period for which the property so delivered was held. Thus, if a taxpayer made a short sale of shares of stock and covered the short sale by purchasing and delivering shares which he held for not more than one year, 100 per cent of the recognized gain or loss would be taken into account under section 117 (a), even though he had on hand other shares of the same stock which he held for more than one year. If, however, he covered the short sale by delivering shares which he held for more than one year but not for more than two years, only 80 per cent of the recognized gain or loss would be taken into account. If the short sale is made through a broker and the broker borrows property to make delivery, the short sale is not deemed to be consummated until the obligation of the seller created by the short sale is finally discharged by delivery of property to the broker to replace the property borrowed by the broker.

The petitioner's object in establishing a short account in 1929 had no relation to tax avoidance. His purpose was to be able to offset possible losses due to a decline in the market with commensurable gains arising from his delivery of shares covering his short account at less than the contractual price. The consideration of tax-saving appeared in 1935 when he became acutely conscious that he was compelled to report as income dividends which were being credited to his long account but was unable to obtain any compensating offset or reduction of dividends which were being charged against him in his short account.

Under Regulation T of the Federal Reserve Board adopted pursuant to the provisions of the Securities Exchange Act of 1934, the petitioner's accounts became restricted and consequently he could not increase his debit balance with Dominick beyond its amount on October 14, 1934, the effective date of the regulation. Therefore, he was forced to close his long and short accounts simultaneously. He was advised that the proper method of accomplishing such liquidation was to buy stock on the open market to cover his short sales and to sell his long stock likewise on the open market. This he proceeded to do in December 1935.

While made concurrently, the petitioner's purchases and sales were wholly independent of each other. They follow the path outlined in the regulations and approved in principle in *duPont* v. *Commissioner*, 98 Fed. (2d) 459; certiorari denied, 305 U. S. 631, and *Henry F. duPont*, 38 B. T. A. 1317. In those cases the respondent took a view opposite to that which he now proposes. There, the court and the Board held that the measure of gain or loss was confined to the value of the securities purchased in the open market and applied to the short sales account. This ruling is in harmony with Regulation 117–6, which requires inferentially that long and short accounts in the same stock be treated as separate accounts. Petitioner elected to close his short sales by making independent covering purchases on the market. This course he was justified in pursuing, whether he paid for them from the proceeds of sales from his long account or from any other source.

The petitioner's motive in protecting his long account with Dominick was wholly legitimate. The short sale device enabled him to do so. (See *Frances Bartow Farr*, 33 B. T. A. 557, for a comprehensive description of a short sale.) The respondent argues that the short sales were not transactions entered into for profit, as required by the statute. The obvious answer to this argument is that the petitioner relied on the anticipated gains from short sales to offset losses feared from the sale of stocks from his long account. The expectation of such gains was in fact the basic reason for his opening the short account. This was a profit motive.

Respondent's third point is that the loss, if any, claimed by the petitioner was fully compensated for by insurance or otherwise and thus is not deductible. He bases this contention on his original theory that the petitioner's acts in selling stock from his long account and purchasing stock for his short account were interdependent and that thus the loss automatically was accompanied by a compensating gain. What we have said on this subject heretofore applies here. The petitioner chose to adopt the method which, under the principle approved in the *duPont* cases and in *Tracy* v. *Commissioner*, 116 Fed. (2d) 500, affirming 38 B. T. A. 1366, enabled him to separate his covering purchases from his sales and to keep each type of transaction on an independent basis, from the viewpoint of taxation. The treatment of such purchases and sales was strictly in accord with his purpose and with his instructions to his brokers. *Henry F. duPont, supra.*

The stocks in both the long and short accounts were identified and traced as they progressed on their several ways. As we said in *Henry F. duPont:*

\* \* \* We do not think that it can be doubted that, if the petitioner had in August 1932 instructed his brokers to close his short account by a covering purchase of 62,500 shares of duPont common stock and the purchase had been made, the gain or loss upon the transaction reflected in the short account would be the difference between the proceeds from the short sale and the cost of the covering purchase.

No sham or fictitious sales or purchases were made but every item clearly reflected the underlying legitimate purpose of the petitioner.

The petitioner is entitled to compute separately his gain and loss on the two types of transactions.

*Decision will be entered under Rule 50.*